Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                          2:19-cv-01841

Oscar Lopez individually and on behalf of
all others similarly situated

                              Plaintiff

          - against -                                 Complaint

General Mills Sales, Inc.

                              Defendant

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

        1.      General Mills Sales, Inc. ("defendant") manufactures, distributes, markets, labels and

sells chocolate-based breakfast cereals ("Products") to consumers from third-party brick and

mortar stores and websites.

        2.      The Products include Chocolate Cheerios, Cocoa Puffs, Chocolate Toast Crunch,

Chocolate Chex and other seasonal cereals (i.e., Count Chocula).

        3.      Cocoa powder ("cocoa") is the "core of a chocolate's flavor, without any extra fat,

sugar, or milk to get in the way."

        4.      For instance, the Chocolate Cheerios' front label states "Made with Real Cocoa"

while the back label contains the outline of a "Cheerio" shape made from cocoa powder with strips

of chocolate, stating:

        Cocoaoooh Yeah! Made with real cocoa for chocolatey goodness.  From cocoa

                                              1

bean to bowl, the real flavor of cocoa in your Cheerios is a chocolatey treat. Go ahead, indulge. With no artificial flavors or colors from artificial sources, and whole grain oats, you deserve it.

 

5.    The Cocoa Puffs, Chocolate Toast Crunch and Chocolate Chex similarly emphasize the importance, and presence of cocoa.

Made With Real Cocoa        mmm…REAL cocoa & cinnamon        Made With 100% Real Cocoa

  

2

6.     The above representations are false, misleading and deceptive because their ingredient lists disclose they actually contain "Cocoa Processed with Alkali."

| | |
|---|---|
| Chocolate Chex | Ingredients: Whole Grain Rice, Rice, Sugar, Canola Oil, Cocoa Processed with Alkali, Salt, Molasses, Natural Flavor. Vitamin E (mixed tocopherols) Added to Preserve Freshness. |
| Chocolate Cheerios | Ingredients: Whole Grain Oats, Sugar, Oat Bran, Corn Syrup, Corn Starch, Cocoa Processed with Alkali, Salt, Canola Oil, Unsweetened Chocolate, Caramel Color, Tripotassium Phosphate, Natural Flavor. Vitamin E (mixed tocopherols) Added to Preserve Freshness. |
| Chocolate Toast Crunch | Ingredients: Whole Grain Wheat, Sugar, Rice Flour, Canola Oil, Fructose, Maltodextrin, Cocoa Processed with Alkali, Salt, Dextrose, Coconut Oil, Soy Lecithin, Trisodium Phosphate, Cinnamon, Natural Flavor. BHT Added to Preserve Freshness. |
| Cocoa Puffs | Ingredients: Whole Grain Corn, Sugar, Corn Meal, Corn Syrup, Cocoa Processed with Alkali, Canola Oil, Fructose, Salt, Caramel Color, Refiner's Syrup, Baking Soda, Natural Flavor. |

7.     Cocoa powder is derived from cocoa beans, which are fermented and dried before their shells are cracked by large rollers.

8.     What remains are the edible portions of the cocoa bean – "nibs."

9.     The nibs are crushed and ground into a fine paste, a process which breaks open their cellular structure and causes release of the fat in the nibs (cocoa butter).

10.    Friction during this process produces enough heat to melt the cocoa butter, and the

combination of crushed, ground nibs and cocoa butter produces chocolate liquor.

11.    The chocolate liquor is pressed between hydraulic plates to squeeze out at least half of the excess cocoa butter.

12.    The remaining hard-cocoa cakes are then grated into a fine powder.

13.    Depending upon the end-use, not all of the fat from the cocoa butter (c. 50% fat) will be extracted in producing cocoa powder.

14.    The result is powders of different qualities, based on the percent remaining of their most valuable constituent – fat: high or "breakfast cocoa" (22% +), medium or "cocoa" (10-12%) and lowfat cocoa (less than 10%).

15.    The cocoa powder can be further treated through alkalization ("Dutch-process" or alkalized) or sold for use in its non-alkalized state.

16.    Alkalization makes the cocoa powder less acidic though it modifies and reduces flavanols and detracts from the "real cocoa" taste.

17.    The alkali treatment results in a cocoa powder with a noticeably darker hue.

<u>Non-Alkalized</u>                                    <u>Alkalized</u>



18.     Defendant has tapped into consumer demand for "real ingredients" by promoting the presence of "real cocoa," as "nearly three-quarters of U.S. consumers find it important to be able to recognize the ingredients in the products they buy."[1]

19.     An industry survey confirmed "recognition of ingredients to be one of the biggest drivers of product choice, with more than half of respondents (52 percent) considering it to be an important factor."[2]

20.     The claim of "real cocoa" is intended to differentiate the cocoa in the Products from other cocoa ingredients bearing the standard cocoa designation, i.e., cocoa processed with alkali, such that is nutritionally and organoleptically superior.[3]

21.     Because cocoa is a commonly used and valued product, consumers have certain expectations based on experience when it comes to how "cocoa" is declared on a label.

22.     It is false, deceptive and misleading to conspicuously promote "real cocoa" without any reference to the presence and use of alkalis either preceding or following.

23.     The Products' use of the optional alkali ingredients significantly distinguishes its cocoa component from cocoa powder which does not contain alkali.

24.     The presence or absence of alkalis effect the taste and color of the cocoa powder to such an extent that they are a characterizing feature and effect whether it will be purchased.

25.     Though it may be duplicative and unnecessary to indicate the presence of all optional ingredients used in standardized foods wherever the affected ingredient is declared, other than the ingredient list, this is not the case where an optional ingredient (alkali) is characterizing towards

---

[1]https://www.snackandbakery.com/articles/88762-clean-label-snacks-and-bakery-move-from-novelty-to-mainstream
[2] https://www.foodinsiderjournal.com/clean-label/75-consumers-will-pay-extra-clean-label-ingredients
[3] 21 C.F.R. §130.11   Label designations of ingredients for standardized foods.

the affected ingredient (cocoa).

26.   No reasonable consumer would expect that a product promoted as containing "real cocoa" or "100% real cocoa" would also contain or be made with alkalis because "real" is understood to be the ingredient in its most simplified and reduced form, and cocoa which does not contain alkalis is readily available.

27.   The representation of the cocoa as "real cocoa" gives the false impression that the cocoa powder is not modified prior to the point which it would otherwise be suitable for inclusion into the Products.

28.   The representation "real cocoa" is false, deceptive and misleading because consumers expect "real cocoa" to indicate a higher quality cocoa than had the ingredient merely been accurately identified as merely "cocoa," the term for when the fat content is between 10 and 22 percent.

29.   By misrepresenting medium fat cocoa as "real cocoa," consumers will expect the cocoa powder component to be nutritionally and organoleptically superior than it actually is.

30.   Such a type of higher fat cocoa – above 22 percent – is referred to as breakfast cocoa, which has a more intense "chocolate-y" flavor.

31.   The Products contain other representations which are misleading and deceptive.

32.   As a result of its false and misleading labeling, defendant was able to sell its foods to hundreds of thousands of consumers throughout the United States and to realize large profits.

33.   Excluding tax, the Products cost no less than $3.99 per 20.3 oz, a premium price compared to other similar products which are represented in a non-misleading way.

Jurisdiction and Venue

34.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

35.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

36.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

37.     Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

38.     A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

39.     Plaintiff is a citizen of Suffolk County, New York.

40.     John and Jane Doe plaintiffs are citizens of the other 49 states.

41.     Defendant is a Delaware corporation with a principal place of business in Minneapolis, Minnesota.

42.     During the class period, plaintiff purchased one or more Products for personal consumption with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within this district and/or state.

43.     Plaintiff paid this premium because prior to purchase, plaintiffs saw and relied on the misleading representations.

44.     Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

Class Allegations

45.   The classes consist of all consumers in the following states:  all, New York who purchased any Products subject to the actionable representations during the statutes of limitation.

46.   A class action is superior to other methods for fair and efficient adjudication.

47.   The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

48.   Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

49.   Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

50.   Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

51.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

52.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

53.   Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

54.   Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

55.   Plaintiff and John and Jane Doe plaintiffs, representing the forty-nine (49) other states where they reside and purchased the Products, incorporate by reference all preceding

8

paragraphs and assert causes of action under the consumer protection statutes of all fifty (50) states.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff.  Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj.  Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*;

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

56.   Defendants' representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

57.   Defendants' acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

58.   Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

59.   The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

60.   Plaintiff incorporates by references all preceding paragraphs.

61.   Defendant misrepresented the substantive, health, quality and nutritional attributes of the Products' composition.

62.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the

11

Products and knew or should have known same were false or misleading.

63.     This duty is based on defendant's purported position as a self-designated learned intermediary and an entity which has held itself out as having special knowledge in the production, service and sale of the product type.

64.     Defendant negligently misrepresented and/or negligently omitted material facts.

65.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

66.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

<u>Breach of Express Warranty and Implied Warranty of Merchantability</u>

67.     Plaintiff incorporates by references all preceding paragraphs.

68.     Defendant sells chocolate-based cereals and cocoa is the core of chocolate's flavor.

69.     The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, organoleptic, sensory, physical and other attributes which they did not.

70.     The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

71.     The Products were not merchantable in their final sale form.

72.     Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

73.    Plaintiff incorporates by references all preceding paragraphs.

74.    Defendant's purpose was to mislead consumers who seek products which feature "real" ingredients – "real" referring to the ingredient in its least modified form such that it can be incorporated into a final product.

75.    It is misleading to refer to the cocoa as "real cocoa" because the cocoa was processed with and contained alkali, an unnecessary addition to the cocoa powder and which detracts from that aspect of the cocoa which is paramount – the chocolate-y flavor.

76.    Defendant's intent was to secure economic advantage in the marketplace against competitors.

77.    Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

78.    Plaintiff incorporates by references all preceding paragraphs.

79.    Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE,** plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct such

13

practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL and other statutory claims;

4. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   March 31, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com
Joshua Levin-Epstein

14

2:19-cv-01841
United States District Court
Eastern District of New York

Oscar Lopez individually and on behalf of all others similarly situated

Plaintiff

- against -

General Mills Sales, Inc.

Defendant

# Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 31, 2019

/s/ Spencer Sheehan
Spencer Sheehan